# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

IN RE APPLICATION OF          §
CHEVRON CORPORATION,        §
                                       §
      *Applicant*,              §
                                         §
v.                                     §         MISCELLANEOUS ACTION H-10-134
                                         §
3TM CONSULTING, LLC AND      §
3TM INTERNATIONAL INC.,        §
                                         §
      *Respondents*.           §

## MEMORANDUM AND ORDER

Pending before the court is the Ecuadorian plaintiffs' motion to quash. Dkt. 19. After a review of the motion, the response, the reply, and for the reasons set forth below, the Ecuadorian plaintiffs are ORDERED to submit a list of the 3TM documents that have been turned over, either directly or indirectly, to Cabrera by Monday, May 24, 2010.

## BACKGROUND

The Ecuadorian plaintiffs and Chevron Corporation are engaged in a lengthy litigation in Lago Agrio, Ecuador.[1] The litigation concerns Chevron's operations in Ecuador from 1964 until 1990, which the plaintiffs contend created "the worst oil-related environmental disaster the world has ever known." Dkt. 38 at 4. In March 2007, the Ecuadorian court appointed a global damages assessment expert, Richard Carbrera. *Id.* at 9. Both parties were given the opportunity to provide materials to Cabrera as he prepared his report; the plaintiffs apparently provided materials to Cabrera, but Chevron did not. *Id.* at 11. In November 2008, Cabrera issued his final expert report to the court in which he estimated the damage at more than $27 billion. Dkt. 40 at 4.

---

[1]Further factual details can be found in related litigation in other U.S. District Courts. *See e.g.*, *Jota v. Texaco, Inc.*, 157 F.3d 153 (2nd Cir. 1998); *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334 (S.D.N.Y. 2005).

On March 29, 2010, Chevron filed an ex parte motion in this court pursuant to 28 U.S.C.

§ 1782 seeking discovery from 3TM Consulting, LLC and 3TM International, Inc. ("3TM"). Dkt.

1. Chevron contends that the Ecuadorian plaintiffs secretly provided Cabrera with a report prepared

by 3TM, which Cabrera then included as part of his final report. Dkts. 1, 2. The court granted the

motion and Chevron issued subpoenas to 3TM. Dkt. 12. The Ecuadorian plaintiffs now move the

court to quash the subpoenas on the grounds that (1) the *Intel* factors weigh against allowing the

discovery to proceed; and (2) the 3TM documents are privileged. Dkt. 38. In the alternative, the

Ecuadorian plaintiffs request the court to narrow the scope of discovery. *Id.*

ANALYSIS

A district court may grant an application made under 28 U.S.C. § 1782 when (1) the person

from whom discovery is sought is found or resides within the district; (2) the discovery is for use in

a foreign tribunal; and (3) the application is made by an interested person. Additionally, a person

"may not be compelled to give his testimony or statement or to produce a document or other thing

in violation of any legally applicable privilege." 28 U.S.C. § 1782. The statutory requirements are

pre-requisites, but the ultimate decision whether to grant the application is within the court's

discretion. *Id.* The Supreme Court has identified several factors that aid the court in making such

a determination: (1) whether the material sought is within the foreign tribunal's jurisdictional reach;

(2) the nature of the foreign tribunal and the character of the proceedings; (3) the receptivity of the

foreign tribunal to U.S. federal-court judicial assistance; (4) whether the request is an attempt to

circumvent the foreign-proof gathering restrictions or other policies of the foreign country or the

United States; and (5) whether the request is unduly intrusive or burdensome. *Intel Corp. v.

Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65, 124 S. Ct. 2466 (2004).

The Ecuadorian plaintiffs do not contest that 3TM resides in the Southern District of Texas,

the discovery is for use in the Lago Agrio litigation, or that Chevron is an interested party within the

2

meaning of the statute.  Rather, the Ecuadorian plaintiffs contend that a balance of the *Intel* factors weighs against allowing the discovery to go forward and that the 3TM documents are protected by the non-testifying expert privilege, the work-product doctrine, and attorney-client privilege.  Dkt. 38.  In response, Chevron argues that the *Intel* factors weigh in favor of allowing the discovery to proceed and that any privilege that normally would protect the 3TM documents was lost when the documents were turned over to Cabrera, a neutral, court appointed expert.[2]  Dkt. 40.  Additionally, even if the 3TM documents are considered work product, Chevron contends it can demonstrate a substantial need for the materials.  *Id.*  Lastly, Chevron argues that the crime-fraud exception negates any privilege that might shield the 3TM documents.  *Id.*

## A.      *Intel* Factors

As an initial  matter, the Ecuadorian plaintiffs ask the court to quash the subpoenas because the court erred in its initial determination that the *Intel* discretionary factors favored discovery.  The plaintiffs allege that Chevron filed this application seeking discovery from 3TM in an attempt to make an end-run around the Ecuadorian court.  They argue that the Ecuadorian court has jurisdiction over Cabrera and, therefore, that court could order Cabrera to produce all the documents that were given to him by the plaintiffs if it so chose.  Dkt. 38 at 16.  Additionally, the plaintiffs argue, the Ecuadorian court is not receptive to any discovery that Chevron is able to procure in the United States because the 3TM material is considered confidential under Ecuadorian law.  *Id.* at 15.  Specifically, Chevron has no right to the documents Cabrera relied upon when preparing his report.  *Id.*  Further, Chevron has very little evidence that any 3TM documents were  used by Cabrera in preparing his report—only the title page of a confidential mediation document.  *Id.* at 17.

---

[2] In their briefing, the Ecuadorian plaintiffs basically concede they turned over at least some documents created by 3TM to Cabrera. *See* Dkt. 38 at 11 ("The materials were submitted with the understanding that they would not be disclosed to anyone other than Cabrera. . ."); Dkt. 49 at 3 ("As Mr. Cabrera is *not* required to disclose [materials submitted to him by plaintiffs], work product submitted to him does not lose the cloak of work product protection."). However, the plaintiffs never clearly specify which of the 3TM documents have been turned over.

Additionally, the application is untimely, coming very late in the Lago Agrio litigation and after the discovery period has been closed for several years. *Id.* at 18.

Chevron contests each of these assertions. First, the argument that the Ecuadorian court is a viable court in which to obtain the 3TM materials is disingenuous. Cabrera has denied that he received secret information from the plaintiffs and 3TM itself it outside the jurisdictional reach of the Ecuadorian court. Dkt. 40 at 23. Second, Chevron disputes that under Ecuadorian law any material provided to Cabrera by the plaintiffs is considered confidential. In fact, Cabrera's swearing-in document states that he is to conduct his duties "with complete impartiality and independence vis-a-vis the parties." Dkt. 44-2. Furthermore, Cabrera has made several statements where he has reaffirmed his commitment to being impartial and transparent. *See, e.g.*, Dkt. 44-8. Third, even if the Ecuadorian court specifically stated that it would not consider any evidence gathered in the United States, which it has not, this is not a dispositive factor. Dkt. 40 at 21. Fourth, if there is any evidence that the plaintiffs were in collusion with Cabrera, this would be material to the Lago Agrio litigation at any stage of the case. *Id.* at 22. And last, the § 1782 application is not unduly burdensome because 3TM has already gathered the requested material and put it on 2 DVDs; 3TM is merely waiting for a ruling from this court before it turns the material over to Chevron. *Id.* at 23.

In light of the evidence presented by both sides, the court reaffirms its ruling that the *Intel* factors favor proceeding with discovery of the 3TM materials. It is apparent that the Ecuadorian plaintiffs provided some or all of 3TM's report to Cabrera and yet it appears Cabrera denies this occurred. Under the circumstances, it seems unlikely the Ecuadorian court would have much success in ordering Cabrera to divulge the 3TM report. Additionally, there is conflicting evidence whether any material the plaintiffs provided to Cabrera would be considered confidential. Each side has affidavits from Ecuadorian lawyers that support their interpretation of the law. It is also clear that

the burden on 3TM is minimal as they have already gathered the information requested and will be compensated for their time.

## B.     Privileges

Even if a district court is inclined to allow discovery under § 1782, the statute protects those materials covered by privilege.  28 U.S.C. § 1782.  The party seeking to assert a privilege from discovery bears the burden to demonstrate its applicability.  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).  In the present case, the Ecuadorian plaintiffs allege that 3TM's work is covered by three privileges: (1) the non-testifying expert privilege; (2) the work-product doctrine; and (3) the attorney-client privilege.

### 1.     *Non-Testifying Expert Privilege*

The Ecuadorian plaintiffs hired 3TM as a non-testifying environmental consultant and a member of their litigation team.  Dkt. 38 at 13.  In that role, 3TM was to assist the plaintiffs in connection with a confidential mediation and settlement discussions related to the Lago Agrio litigation.  *Id.*  As such, the plaintiffs argue that 3TM is entirely shielded from discovery by the non-testifying expert privilege set forth in Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure.  *Id.* at 19. And, giving the 3TM documents to Cabrera does not waive this privilege because he himself is not a testifying expert, but rather a court appointed expert.  *Id.* at 20. Further, under Ecuadorian law, the material provided to court appointed experts is confidential.  *Id.*

The Ecuadorian plaintiffs' argument on this point is unavailing.  While 3TM may well have originally been hired to serve only in a consulting expert capacity, as soon as its report was given to the court, or at least an auxiliary of the court, to be used in preparing Cabrera's expert report that shield was lost.  By the very nature of Cabrera's role, his report is "testimony" that the Ecuadorian

court will consider in making its ruling.[3]  Additionally, the question before this court is whether under U.S. law, not Ecuadorian law, the information is privileged.  By providing consulting expert reports to a "testifying" expert, the privilege is lost.  *See United States v. City of Torrence*, 163 F.R.D. 590, 593 (C.D. Cal. 1995).

2.    *Work-Product Doctrine*

The plaintiffs also contend the 3TM materials are protected by the work-product doctrine. Dkt. 38 at 20.  However, other than this statement, the plaintiffs do not provide any evidence to support this contention.  Thus, the plaintiffs have failed to carry their burden to demonstrate this privilege applies.  Additionally, the fact that the materials were voluntarily to given to Cabrera, an agent of the court, destroys this privilege even if it were to apply.  *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

3.    *Attorney-Client Privilege*

Lastly, the plaintiffs contend that the 3TM materials are covered by attorney-client privilege. Again, however, once the 3TM materials were provided to Cabrera, a third party, this privilege was destroyed.  *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999).

In sum, the plaintiffs have failed to carry their burden to demonstrate a privilege applies to any of the 3TM material turned over to Cabrera.

## C.    Narrowing the Scope of Discovery

In the alternative, the plaintiffs ask this court to narrow the scope of discovery because the subpoena is very broad and potentially covers more than the material turned over to Cabrera.  The plaintiffs propose a foundational deposition limited to just two questions: (1) whether 3TM

---

[3]Testimony is defined as a "solemn declaration or affirmation made to establish a or prove some fact." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2609 (2d ed. 1934).  The fact that Cabrera will not take the stand in Ecuador and testify is not the litmus test used in determining whether someone is a testifying expert. For example, expert testimony can be introduced through affidavits in a motion for summary judgment.  *See, e.g., Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998).

collaborated with Cabrera; and (2) the extent to which 3TM recognizes its work in Cabrera's report. Dkt. 38 at 25.

The subpoena issued to 3TM orders the production of the following documents: (1) a full and complete copy of the 3TM report, including all exhibits, annexes or attachments; (2) all documents relating to any work performed by 3TM related to the Lago Agrio litigation; (3) all communications related to any work performed by 3TM related to the Lago Agrio litigation; (4) all documents related to the Cabrera report; (5) all documents related to the Stratus Contract #SC11278; and (6) all documents related to any compensation received or paid by any plaintiff affiliated person related to the Lago Agrio litigation.  Dkt. 6 at 6.  The court agrees that this is overly broad.  As discussed above, to the extent any 3TM material has been turned over to Cabrera—either directly by 3TM, by the plaintiffs, or in any other fashion—that material is subject to discovery and no privilege applies.  However, given the broad scope of the subpoena, it is quite possible some of the documents requested have not been turned over to Cabrera and, therefore, one or more privileges may apply.

Therefore, in an effort to more narrowly craft the scope of discovery, the plaintiffs are ORDERED to submit a list of the 3TM documents that were turned over, directly or indirectly, to Cabrera by Monday, May 24, 2010.  At that time, the court will then reconsider the scope of discovery.

### CONCLUSION

A further review of the *Intel* factors favors proceeding with discovery.  Additionally, the plaintiffs have failed to demonstrate that any privilege applies to any 3TM material provided to Cabrera.  The plaintiffs are ORDERED to produce a list of the 3TM documents that were produced, directly or indirectly, to Cabrera by Monday, May 24, 2010.

Signed at Houston, Texas on May 20, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY