UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE APPLICATION OF<br>CHEVRON CORPORATION,<br><br>  *Applicant*,<br><br>v.<br><br>3TM CONSULTING, LLC AND<br>3TM INTERNATIONAL INC.,<br><br>  *Respondents*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | MISCELLANEOUS ACTION H-10-134 |

**ORDER**

Pending before the court is the Ecuadorian Plaintiffs' motion to quash the subpoenas issued to respondent 3TM Consulting, LLC and 3TM International Inc. Dkt. 19. After considering the motion and all related documents, the Fifth Circuit's September 2010 opinion remanding the case back to this court (Dkt. 74),[1] and applicable law, the court is of the opinion that the motion to quash should be DENIED.

**I. BACKGROUND**

Chevron Corporation ("Chevron") initiated this case by filing an application for discovery under 28 U.S.C. § 1782(a). Dkt. 1. Chevron specifically sought an order requiring respondents 3TM Consulting, LLC and 3TM International Inc. (collectively, "3TM") to provide testimony and produce documents that Chevron could use in a lawsuit pending in Lago Agrio, Ecuador ("Lago Agrio Lawsuit"). Dkt. 2. In the Lago Agrio Lawsuit, a group of Ecuadorians ("Ecuadorian Plaintiffs") filed a claim against Chevron, claiming that Chevron is liable for environmental damage caused by oil production operations in Ecuador. *Id.* The Lago Agrio court appointed an expert, Richard Stalin Cabrera Vega ("Cabrera") to assess the damage. *See id.* Cabrera issued a report attributing $27.4

---

[1] The Fifth Circuit Opinion is published as *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010).

billion in damages to Chevron. *See id.* Chevron believes that Cabrera's expert report was actually drafted by an expert hired by the Ecuadorian Plaintiffs, Stratus Consulting, and by a subcontractor hired by Stratus, 3TM. *See id.* Given other evidence Chevron has already collected, Chevron believes that the discovery it is now requesting will help prove that there was collusion between Cabrera and the Ecuadorian Plaintiffs. *See id.* Since 3TM resides or can be found in this district, Chevron sought this court's assistance in obtaining the discovery. *See id.* The court granted the application to issue the requested subpoenas pursuant to § 1782(a), and the Ecuadorian Plaintiffs filed a motion to quash the subpoenas. Dkts. 12, 19.

Upon its first consideration of the Ecuadorian Plaintiffs' motion to quash, the court ordered that a foundational deposition of 3TM be held. Dkt. 57. The Ecuadorian Plaintiffs appealed that order, and the Fifth Circuit affirmed and remanded the case for further proceedings. Dkt. 74. Shortly thereafter, Chevron moved to expand the scope of discovery. Dkt. 80. After considering the impact of the Fifth Circuit's opinion and the parties' briefing relating to Chevron's motion to expand the scope of discovery, the court denied Chevron's motion to expand the scope of discovery, finding that, at that point, a foundational deposition was necessary in order to determine if the similarities between a report issued by Cabrera and the work produce of 3TM showed "'that Cabrera more likely than not incorporated 3TM work product into his report.'" Dkt. 88 (quoting Dkt. 74 (5th Circuit opinion)). This inquiry was necessary because the court was attempting to determine the extent to which any privilege held by 3TM was waived by disclosure to Cabrera. During the foundational deposition, 3TM revealed that while 3TM did not directly collaborate with Cabrera, at least part of the materials that 3TM submitted to the company that hired 3TM, Stratus, was more likely than not incorporated into the Cabrera report. Dkt. 92.

The United States District Court for the District of Colorado has been considering a parallel application in which Chevron sought to depose Stratus and to obtain its relevant documents. *See*

*Chevron Corp. v. Stratus Consulting, Inc. (Stratus)*, No. 10-cv-00047-MSK-MEH, 2010 WL 3923092 (D. Colo. Oct. 1, 2010) (Dkt. 78, Exh. F). On October 1, 2010, the Colorado court issued an opinion in which it found that "the Stratus respondents were not hired by Plaintiffs . . . for the purpose of Plaintiffs' counsel rendering legal advice, but for the purpose of informing a damages assessment conducted by a court-appointed expert"—namely, Cabrera. *Id.* The Colorado court determined that the Ecuadorian Plaintiffs had not satisfied their burden of establishing that a privilege existed in the first instance and that, even if a privilege did exist, Stratus waived its privilege both by disclosure and pursuant to the sword-shield doctrine. *Id.* Since the 3TM work at issue in this case was performed for Stratus and Stratus incorporated some of that work into the documents considered by the Colorado court, this court found the Colorado court's decision regarding whether Stratus's documents were privileged relevant to this case. It therefore instructed the parties to submit additional briefing regarding the impact of the Colorado holding on the scope of discovery in this case. Dkt. 92. The matter now has been fully briefed.

## II. ANALYSIS

Chevron argues that the Colorado court's holding that no privilege applied to Stratus's work is dispositive as to whether 3TM's work is privileged. According to Chevron, because 3TM was a subcontractor to Stratus, and Stratus's work is not privileged, 3TM's work cannot be considered privileged, either. Dkt. 93. The Ecuadorian Plaintiffs argue that the Colorado court's opinion has no bearing on the privileged nature of 3TM's documents because 3TM communicated only with Stratus, who it claims is a "member of Plaintiffs' litigation team." Dkt. 95. The Ecuadorian Plaintiffs insist that 3TM is a consulting expert and that its work is protected under the work-product doctrine and Rule 26. *See id.*

The work-product doctrine applies to documents that were "prepared in anticipation of litigation." FED. R. CIV. P. 26 (b)(3); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th

3

Cir. 2000). The purpose behind the doctrine is to protect attorneys' research, analysis, legal theories, and mental impressions." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (discussing *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947)). The work-product doctrine, unlike the attorney-client privilege, "does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Roger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* Generally, work-product protection is waived when the materials are disclosed to an adversary or disclosed in a way that increases the opportunities for the adversary to obtain the information. *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 384 (D. Ariz. 2010) (citing *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 590 (N.D.N.Y. 1989), *Transamerica Computer Co. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646 (9th Cir. 1978), and *Simpson v. Braider*, 104 F.R.D. 512, 522-23 (D.D.C. 1985)); *Varel v. Banc One Capital Partners, Inc.*, No. CA3:93-CV-1614-R, 1997 WL 86457, at *2 (collecting cases). A finding of waiver as to certain materials does not necessarily mean that the protection is waived as to all materials on the same subject matter. Rather, courts tend to consider the purpose behind work-product immunity when determining the scope of a waiver. *See, e.g.*, *In re United Mine Workers of Am. Emp. Benefits Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (finding that creating "a subject-matter waiver of the attorney work product in this case" . . . . "would be inconsistent with purposes of the attorney work product privilege" because the party disclosing the information did not deliberately disclose it and because the information disclosed was not beneficial to the party that disclosed it); *Varel*, 1997 WL 86457, at *3 ("In light of the distinctive purpose underlying the work-product doctrine, a general subject-matter waiver of work-product immunity is warranted only when the facts relevant to the narrow issue are in dispute and have been disclosed in such a way that it

would be unfair to deny the other party access to other facts relevant to the same subject matter." (citing *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 621 (D. Del. 1993)).

Before considering whether work-product immunity has been waived, the court must determine whether it existed in the first place. 3TM did not prepare the material at issue "in anticipation of litigation" to aid counsel in formulating legal theories and mental impressions about the case or to help with an attorney's research and analysis. 3TM was a subcontractor for Stratus, and 3TM prepared materials that Stratus used to create a report for Cabrera—a court-appointed expert. 3TM's work product does not reveal an attorneys' legal theories or mental impressions, and its purpose was, ultimately, to aid the Lago Agrio's court-appointed expert (and the court), not the Ecuadorian Plaintiffs' counsel. Thus, this court, in accord with the Colorado court, does not believe that any privilege attached to Stratus's work, and in turn 3TM's work, in the first instance. *See Stratus*, 2010 WL 3923092, at *11 (holding that the Ecuadorian Plaintiffs "fail[ed] to meet their burden of establishing the application of attorney-client privilege and the work product doctrine in the first instance").

However, even if work-product immunity attached to 3TM's documents initially, any immunity attached to 3TM's work was waived when Stratus gave Cabrera 3TM's work. Cabrera is a testifying expert, and disclosure of documents to a testifying expert waives immunity. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (Dkt. 74). The Ecuadorian Plaintiffs argue that even if immunity has been waived with regard to documents provided to Cabrera, Chevron already has all of the documents that ultimately ended up in the Cabrera report, so no further discovery is needed. Chevron argues, however, that the waiver of work product immunity, if such immunity ever existed, extends to all documents relating to the same subject matter as the material actually disclosed. The Fifth Circuit left this issue open for this court

to consider on remand. *See id.* ("In this case, the disclosure of 3TM documents to Cabrera, a court-appointed expert, would waive immunity for disclosed documents and possibly others as well.").

Under the sword-shield doctrine, "work product protection is waived when . . . a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent the opponent from challenging the assertion." *Niagara Mohawk Power*, 125 F.R.D. at 587; *see Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) (citing *Niagara Mohawk Power* for this proposition with favor); *cf. Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (noting, in the context of attorney-client privilege, that waiver occurs when the litigant "'place[s] information protected by it in issue through some affirmative act for his own benefit'" because "'to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (other citations omitted)).[2] Here, the Ecuadorian Plaintiffs used information presumably beneficial to the Ecuadorian Plaintiffs' position as a sword when it provided the information to the court-appointed expert. They were not safeguarding the fruits of 3TM's work that they found beneficial to their lawsuit, yet they now attempt to shield the other information 3TM discovered in the course of its analysis of the alleged environmental damage in Ecuador, claiming that it is confidential, privileged information. As the Colorado court noted, "fundamental fairness precludes [the Ecuadorian] Plaintiffs from using communications concerning Stratus and Mr. Cabrera as a shield from production after wielding the conclusions from disclosure of these

---

[2] In *Conkling*, there was some debate about whether the sword-shield doctrine could apply to attorney work-product as opposed to attorney-client communications. The plaintiff argued that the Fifth Circuit had "adopted an absolute rule prohibiting discovery of attorney work product" in *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S. Ct. 316 (1976). The Fifth Circuit noted that the defendants disagreed with this proposition, and that the "defendants' argument might be persuasive were [the court] presented with a more compelling set of facts." 883 F.2d at 435. The Fifth Circuit has subsequently ruled that immunity under the work-product doctrine may be waived. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (ruling during the earlier appeal in this case that "the disclosure of 3TM documents to Cabrera, a court-appointed expert, would waive immunity for disclosed documents and possibly others as well" (citing Fed. R. Civ. P. 26(a)(2)(B))). While this ruling dealt with immunity by disclosure rather than due to the sword-shield doctrine, the court believes that the Fifth Circuit would rule that work-product immunity can be waived under the sword-shield doctrine as well, under the facts of this case.

6

communications as a multi-billion dollar damages sword." *Stratus*, 2010 WL 3923092, at 10 (Dkt. 78, Exh. F at 19) (relying, in part, on *Frontier Ref., Inc.*, 136 F.3d at 704). Since 3TM is merely an arm of Stratus, the same reasoning holds true here. It would be fundamentally unfair for the Ecuadorian Plaintiffs to use 3TM's work product to support their positions in the report prepared for Cabrera and then attempt to shield the remainder of 3TM's work product, which may be beneficial to Chevron, from production.

The Ecuadorian Plaintiffs argue that 3TM's work product is protected under Rule 26 and that the common-law sword-shield doctrine cannot take precedence over the requirements of Rule 26. Dkt. 95.[3] The sword-shield doctrine, however, does not conflict with Rule 26. Rule 26(b)(4)(D), like the sword-shield doctrine, is founded on principles of fairness, and it specifically allows for exceptions.[4] Under the plain language of the rule, the work of an expert who is "employed only for trial preparation," is "ordinarily" protected from discovery, but the opposing party may obtain the information if it can show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." FED. R. CIV. P. 26(b)(4)(D). "A party seeking to show exceptional circumstances under [Rule 26(b)(4)(D)] carries a heavy burden . . . The exceptional circumstances requirement has been interpreted by courts to mean an inability to obtain equivalent information from other sources." *In re Shell Oil Refinery*, 132 F.R.D. 437, 442

---

[3] In support of this assertion, the Ecuadorian Plaintiffs cite an Eighth Circuit case, quoting the following language from the concurrence: "[A] court's authority to fashion common-law rules . . . . may not be exercised to circumvent or conflict with the Federal Rules of Criminal Procedure." *United States v. Norris*, 486 F.3d 1045, 1053 (8th Cir.) (Colloton, J., concurring). The opinion of a concurring justice in another circuit is not binding on this court, and, even if it were, it has no bearing on this case because the common-law rule here does not conflict with the statute.

[4] Rule 26(b)(4)(D) was 26(b)(4)(B) prior to December 1, 2010. The new 26(b)(4)(B) and (C) were added to "provide work-product protection" for drafts of expert reports and for attorney-expert communications. *See* Fed. R. Civ. P. 26, Advisory Committee Notes, 2010. According to the 1970 Advisory Committee that drafted the original rule, a consulting expert's opinions are not protected by the "work-product doctrine" simply because he or she is a non-testifying expert hired in anticipation of litigation. *See* FED. R. CIV. P. 26 advisory committee notes (1970). The Advisory Committee instead stressed that the rule's purpose is to prevent *unfair* discovery of facts known and opinions held by consulting experts. *See id.* ("These new provisions of subdivision (b)(4) repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert. . . . They also reject as ill-considered the decisions which have sought to bring the expert information within the work-product doctrine." (citations omitted)).

(E.D. La. 1990) (citing *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980)) (other citations omitted). Chevron has shown exceptional circumstances that justify a waiver of the immunity that would ordinarily apply to 3TM's documents (if 3TM were considered a consulting expert). While the Ecuadorian Plaintiffs have had access to all of 3TM's and Stratus's materials, since they hired the experts, Chevron has not. In this case, unlike most cases, Chevron cannot just hire its own expert to rebut 3TM's and Stratus's findings in the Cabrera report and thus bring to light anything that may have been conveniently left out of that report. Chevron seeks to show that the Ecuadorian Plaintiffs conspired with Cabrera to unfairly influence the court. Chevron must have access to the requested discovery in order to determine whether 3TM was part of the alleged conspiracy and, if not, whether Stratus unfairly portrayed 3TM's findings (which ended up in Cabrera's report) for the Ecuadorian Plaintiffs' benefit.[5]

The Ecuadorian Plaintiffs claim that no exceptional circumstances exist because Chevron has access to Stratus's documents through the Colorado litigation and therefore does not need 3TM's documents and certainly does not need 3TM's deposition. However, at 3TM's foundational deposition, Chevron's counsel asked 3TM's corporate representative whether, if ordered to testify by the court, he could testify about "what 3TM was instructed to do by Stratus in the scope of 3TM's work" and about "what Stratus told 3TM that Stratus was going to do with 3TM's work." Dkt. 90, Exh. 1 at 71. 3TM's corporate representative responded in the affirmative. *Id.* 3TM's representative obviously has some information that will be beneficial in fleshing out whether and, if so, to what extent Stratus and 3TM were purposefully ghost-writing Cabrera's report. Chevron's

---

[5] The Ecuadorian Plaintiffs also claim that it would be unfair to disregard the protection generally afforded to a consulting expert's work product simply because a testifying expert "considered some information from [the] consulting expert." Dkt. 95 at 7. Here, Cabrera did more than "consider" the facts and opinions of 3TM. Portions of Cabrera's report are almost exact copies of 3TM's work. *See, e.g.*, Dkt. 90, Exh. 1 at 33:18-34:11 (indicating that 3TM's corporate representative agreed that the first four sentences of the Physical Stabilization and Chemical Fixation paragraph in 3TM's November 6, 2007 report were identical to Cabrera's first four sentences in his Physical Stabilization and Chemical Fixation paragraph "except for maybe a couple of words," that they used the same colloquial language such as "on the other hand" and "et cetera," and that the parentheticals for the first sentence were the same in both reports).

counsel also asked 3TM's representative if he believed "that there are documents in 3TM's possession that [he] could review that would indicate to [him] whether 3TM's work product was ultimately incorporated into the Cabrera report or its annexes . . . ." *Id.* 3TM's representative again responded in the affirmative. *See id.* Thus, while the foundational deposition only affirmatively revealed that approximately fourteen paragraphs of Cabrera's report more likely that not derived from 3TM's work, as the Ecuadorian Plaintiff's point out (Dkt. 95), 3TM's representative indicated that looking at other 3TM documents *could* show more. These documents need to be reviewed so that Chevron may show the Ecuadorian court how much of Cabrera's report was actually written by 3TM.

In sum, Rule 26(b)(4)(D), like the sword-shield doctrine, is founded on principles of fairness, and it specifically allows for exceptions. Chevron has shown that portions of 3TM's work were incorporated into the final report submitted by Cabrera to the Ecuadorian court, sometimes verbatim. *See* Dkt. 92. The portions of 3TM's work that support the Ecuadorian Plaintiffs' position have been given to the court-appointed expert, and Chevron has shown that it cannot obtain the portions of 3TM's work that may not have been used by Cabrera without obtaining discovery through this court. Thus, in accordance with the principles of fairness upon which the Rule was propounded and the plain language of the Rule, Chevron is entitled to depose 3TM about the topics listed in the subpoena and to obtain the requested documents in advance. Accordingly, the Ecuadorian Plaintiffs' motion to quash the subpoena is DENIED.

### III. Other Issues

The Ecuadorian Plaintiffs present two more arguments relating to the subpoenas that must be addressed. First, they claim that Chevron cannot take 3TM's deposition because Federal Rule of Civil Procedure 30(a)(2)(A)(I) limits the number of depositions that Chevron may take and that Chevron had already taken eleven depositions in connection with the Lago Agrio Lawsuit as of

November 2010. Second, they argue that the new changes to Rule 26 require the court to narrow the scope of Chevron's subpoena. As to the first argument, Rule 30 only limits the number of depositions a party may take *without obtaining leave of court*. The court hereby grants leave. As to the second argument, the new amendments provide work-product protection for draft reports of testifying experts and communications between testifying experts and attorneys. *See* Fed. R. Civ. P. 26(b)(4)(B)-(C). The Ecuadorian Plaintiffs have consistently argued that 3TM is a consulting expert, not a testifying expert. Thus, under its own argument, these rules would not apply. And, even if 3TM is considered a testifying expert, there has been no contention that any of the reports that it submitted to Stratus were the type of reports required by Rule 26(a)(2), which are the type of draft reports protected by the new rule.[6] *See* Fed. R. Civ. P. 26(b)(4)(B). Therefore, neither of these arguments has merit.

---

[6] The Ecuadorian Plaintiffs ask the court to limit the required testimony to the types of materials that would be discoverable by a typical testifying expert. However, Chevron does not need this discovery merely to determine what 3TM's expert opinion is. It needs the discovery to determine what portions of Cabrera's report are taken from 3TM's work and whether and, if so, to what extent 3TM and Stratus knew about or participated in an alleged conspiracy between Cabrera and the Ecuadorian Plaintiffs. Thus, its attempt, in the alternative, to shift 3TM into a typical testifying expert is misplaced.

## IV. Conclusion

The Ecuadorian Plaintiffs' motion to quash the subpoenas issued to respondent 3TM Consulting, LLC and 3TM International Inc. (Dkt. 19) is DENIED. 3TM Consulting, LLC and 3TM International Inc. shall produce the documents requested in the subpoenas (Dkt. 6, Exh. 1) within twenty days of this order. Additionally, 3TM Consulting, LLC and 3TM International Inc. shall submit to a deposition on the topics listed in the subpoenas. The parties shall confer and agree to a date for the depositions that is not more than thirty days from the date of this order.

Signed at Houston, Texas on January 10, 2011.

_____
Gray H. Miller
United States District Judge